**Derek C. Johnson, OSB #88234**
djohnson@jjlslaw.com
Johnson Johnson Larson & Schaller
975 Oak Street, Suite 1050
Eugene, OR 97401
Phone: (541) 484-2434
Fax:  (541) 484-0882

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| **PENGUIN GROUP (USA), INC.,** ) | Case No.: 3:13-CV-00497  HU |
| ) | |
| Plaintiff, ) | **MOTION TO TRANSFER ACTION TO** |
| ) | **DISTRICT OF ARIZONA** |
| v. ) | **[F.R.C.P. 12(b)(3)]** |
| ) | |
| **AMERICAN BUDDHA,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

Defendant American Buddha respectfully moves the Court pursuant to F.R.C.P. 12(b)(3) and 28 U.S.C. § 1404(a) for an order dismissing the action on the grounds that venue is improper. Undersigned counsel certifies that the parties made a good faith effort through a telephone conference to resolve the dispute and have been unable to do so.

The grounds for the motion are that the requirements of Section 1404(a) are met in all particulars. The key witnesses for Defendant, as well as any relevant documents, are in Tucson, Arizona. Therefore, the District of Arizona would be a more convenient forum for Defendant, would impose no additional inconvenience on Plaintiff, a resident of New York, and thus a transfer pursuant to Section 1404(a) will be in the interests of justice. Transfer will also preserve the judicial resources of this District. Defendant respectfully requests a telephonic hearing on the motion.

The motion is supported by attached Memorandum of Law, the Declarations of Tara Lyn Carreon, Lewis Lepley, Bernard Sharkus, Libby Hubbard, and Lucia K. Maya, submitted herewith, the files and records of the action, and such additional evidence and argument as the Court may consider at the hearing on the motion.

DATED: June 17, 2013.

/s/ Derek C. Johnson
Derek C. Johnson, OSB #88234
Johnson Johnson Larson & Schaller
Attorney for Defendant American Buddha

## MEMORANDUM OF LAW

1. **Facts**

American Buddha was formed June 8, 2000 as an Oregon corporation, where Director Tara Carreon then resided.  (T. Carreon Dec. ¶ 2.)  In April 2007, the Director moved to Tucson, Arizona. (T. Carreon Dec. ¶ 1.)  She has returned to Oregon only once since then, for a one-week visit. (T. Carreon Dec. ¶ 1.)  She is the sole Director for the corporation. (T. Carreon Dec. ¶ 2.)  Conducting this action in Oregon would be a great hardship for Defendant, that derives no income from the activity that is the subject of the litigation.  (T. Carreon Dec. ¶ 6.)  This case is about an issue of great importance – whether the immunity from copyright liability accorded to libraries protects a small community library with a virtual archive.  A decision adverse to American Buddha would shape the law, as there is no law on this topic.  Under such circumstances, a vigorous, well-presented defense, such as American Buddha would be able to present in the Arizona venue, will serve the public interest.  (T. Carreon Dec. ¶ 7.)

2. **The Purpose of the Transfer Statute Is To Overcome Unfair Cost Advantages Arising from the Plaintiff's Choice of An Inconvenient Forum, And Thus Advance The Interests of Justice By Achieving Fair and Accurate Adjudications**

The Court may transfer any civil action to another district where it might have been brought for the "convenience of the parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).

Section 1404(a) performs an important role in the federal system of adjudication.  A data-based scholarly analysis of 2,804,640 federal civil outcomes from 1979 - 1991 by Cornell Law Professors Kevin M. Clermont and Theodore Eisenberg found that *defendants seeking transfer prevailed 28.71% more often when the court transferred the action*, as compared with non-transferred cases: "The win rate drops from 57.97% when the case in not transferred to 29.26%

when transfer is granted."[1]  Professors Clermont and Eisenberg argue that "the most powerful explanation for the transfer effect involves forum-shopping: the plaintiffs' win rate declines because the plaintiff has lost a forum advantage."  They explain:

> "More specifically, the explanation runs as follows: The plaintiff initially chooses the forum by filing suit. If the choice is too favorable to tolerate, the defendant moves to transfer. A relatively objective judge then chooses the forum, ordering transfer if it is in the interest of justice. The court considers many factors, with matters of convenience dominating; the balance must tilt decidedly toward transfer in order to overcome the presumption in favor of the plaintiff's choice of forum.  So, while the court will not transfer merely to shift the inconvenience from the defendant to the plaintiff, ***the court will transfer when the balance of inconveniences is really lopsided***. If transfer occurs, the plaintiff's chance of winning declines through a variety of changed circumstances, such as a possibly less favorable set of local biases in the new forum. ***The dominant influence, however, is probably the shifted balance of inconveniences.***"
>
> Page 1515, Exorcising the Evils of Forum-Shopping (emphasis added).

The removal of what might be called the foreign venue "handicap" thus simply levels the playing field, resulting in more accurate[2] judgments, based either on the fairly-adjudicated merits or on negotiations between equally-situated parties, rather than being the product of uneven bargaining power.  Naturally, justice is promoted by such results, thus furthering the purposes of Section 1404(a), that authorizes transfers "in the interests of justice."  Or as Professors Clermont and Eisenberg put it -- "Accuracy tends to be a good, being a critical aspect of justice."

### 3. Transfer to Arizona Will Serve the Interests of Justice

To support a motion for transfer, the moving party must establish: (1) that venue is proper

---

[1] See page 1513 and Figure 1. Clermont, Kevin M. and Eisenberg, Theodore, "Exorcising the Evil of Forum-Shopping" (1995).Cornell Law Faculty Publications. Paper 245. http://scholarship.law.cornell.edu/facpub/245

[2] The term is from the article: "[A]s transfer works to neutralize any lopsided cost advantage, and thereby to equalize the effectiveness of the two sides' litigation expenditures, the outcome should be more accurate in the transferee court."  Page 1515, Clermont and Eisenberg.

in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that transfer will serve the convenience of the parties and witnesses and will promote the interests of justice. *See Geo F. Martin Co. v. Royal Ins. Co. of America*, No. C03-5859, 2004 WL 1125048, at *2 (N.D. Cal May 14, 2004). The first two requirements for a Section 1404(a) transfer are met here. American Buddha "resides" in Arizona for venue purposes. 28 U.S.C. § 1391. As the evidence submitted herewith establishes, the third element, convenience of the parties, overwhelmingly favors transfer of venue.

"In the judgment of countless federal courts, if some other forum will serve the convenience of the witnesses better, a motion to transfer under Section 1404(a) is significantly more likely to be granted." 15 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3851, p. 203-204 (3d ed. 2007). Moreover, "[i]n determining the relevant convenience of the parties the Court not surprisingly considers the residence of the parties." Wright & Miller § 3849, p. 166.

The corporate headquarters for American Buddha is in Arizona, and its witnesses and documents pertaining to its activities are all in Arizona. (T. Carreon Dec. at ¶ 3.) Being required to defend in Oregon would impose a severe hardship on American Buddha, and detract from its ability to present a meritorious defense to Plaintiff's claims on an issue that affects the public interest. (T. Carreon Dec. at ¶ 3.) The library has fifty-two (52) members, many of whom can provide testimony relevant to the defense. (T. Carreon Dec. at ¶ 3.) Of those, four have provided declarations in support of this motion, averring that they will be able to testify as to the existence of a legitimate library that not only issues library cards and lends books, but also provides a community resource for literary, cultural, and artistic exchange. (Declarations of Lewis Lepley, Bernard Sharkus, Libby Hubbard and Lucia K. Maya.) However, they all aver that they could provide this relevant testimony, vital to the defense, if the action is tried in Tucson. All of the events related to the claims and defenses in this case arise out of defendant's activities in Tucson, Arizona, and its incorporation in Oregon raises no issues that will require testimony or be

facilitated by a Portland trial.

The law plainly supports a transfer to Arizona on these facts. *See e.g.*, *Newegg, Inc. v. Telecommunication Sys.*, No. C09-0982, 2009 WL 1814461 (N.D. Cal. June 23, 2009) (finding that because plaintiff and its witnesses already reside hundreds of miles away from the venue, transfer resulted in an overall gain in convenience to the largest number of the parties and witnesses); *Geo F. Martin Co.*, 2004 WL 1125048 (transferring venue when majority of witnesses identified resided in or near the transferee district); *Vitria Tech., Inc. v. Cincinnati Ins. Co.*, C05-01951, 2005 WL 2431192 (N.D. Cal. Sept. 30, 2005) (transferring the case after finding the majority of documentary evidence pertinent to the dispute was located in the transferee district).

Defendant's activities that allegedly give rise to this complaint lack a significant connection to the jurisdiction where Plaintiff has chosen to initiate an action. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *Pacific Atlantic Trading Co., Inc. v. M/V Main Exp.*, 758 F2d 1325, 1330 (9th Cir. 1985); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (when considering whether to transfer venue, court gives weight to the interest in having localized controversies decided at home). Here, there is no localized controversy in Oregon. Rather, the localized controversy is in Arizona, the real "home" of this case.

As the analysis of Professors Clermont and Eisenberg powerfully establishes, the matter of witness "convenience," is outcome-determinative in a very large proportion of cases. Indeed, their research establishes that in this case, the just and accurate determination of the matters at issue in this action can only be achieved in the District of Arizona. Accordingly, defendant has carried its burden of establishing that, in the interests of justice, the action should be transferred for trial to the Evo A. DeConcini U.S. Courthouse at 405 W. Congress Street, Tucson, Arizona 85701 in the District of Arizona.

### 4. Penguin's Arguments Against Transfer Have No Merit

Based on the results of the unsuccessful effort to resolve Defendant's transfer request by informal negotiations in the meet and confer directed by the Court as a preliminary to refiling this

motion, Defendant is able to anticipate the arguments of Penguin, and thus addresses them in this opening brief.

Penguin's only answer to the question, "What does this case have to do with Oregon?" is that the defendant is incorporated here. But this only establishes personal jurisdiction over Defendant, that is equally available in the Arizona venue. A motion to transfer venue presumes the existence of personal jurisdiction over Defendant and turns on the issue of witness convenience and fairness to the Defendant faced with defending in a distant venue. The only way that incorporation in Oregon would make any difference to the determination of this motion would be if it somehow tipped the balance toward achieving "the interests of justice." But it does not. Accordingly, Penguin's actual answer to the question "What does this case have to do with Oregon?" is "nothing."

To the question, "Why does the defendant's inability to present its witnesses in the Portland venue, when Penguin could as easily litigate in Tucson, not justify transfer?" Penguin simply predicts victory on liability before trial. However, this argument suffers from at least two fatal defects.

*First*, as an element of liability at paragraph 27 of the Complaint, Penguin alleges:

> "The exemption from liability for copyright infringement under Section 108 of the Copyright Act, 17 U.S.C. § 108, does not apply to "virtual-only" libraries and archives, *i.e.*, those that do not conduct their operations through physical premises."[3]

(Complaint, page 5, Docket # 1.)

This allegation clearly puts the question of whether defendant has a "brick and mortar" library in issue as a predicate to establishing Penguin's theory of liability, and Defendant has presented the declarations of witnesses for the defense who cannot testify in Portland, but can testify in Tucson. (Lepley Dec. ¶¶ 4 - 6; Sharkus Dec. ¶¶ 3 - 5; Hubbard Dec. ¶¶ 3 - 5; Lucia K. Maya Dec. ¶¶ 3 - 4.) Thus, this issue can only be fairly tried in the District of Arizona.

---

[3] Defendant disputes the legal accuracy of the quoted statement as well as its factual basis.

*Second*, Penguin seeks statutory damages under 17 U.S.C. § 504, and Defendant is entitled to a jury trial on the amount of statutory damages. Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 342-45 (1998). Statutory damages may vary from $750 to $150,000 per work. There are two Penguin works that would qualify for a statutory damages award, assuming *arguendo*, a prior finding of liability.[4] Clearly, the Defendant's defense that its activities were good faith acts performed for positive reasons, for community benefit, would help the jury to determine whether to award $750 or twenty times that amount. Thus, even assuming a non-jury victory on liability, a trial on damages is assured, and without a transfer, Defendant would be hamstrung in attempting to present its defense, either to a jury or the Court.

Penguin concedes, as it must, that this case is entirely a creature of federal law. Thus, Oregon has no interest in seeing its law enforced, and that cannot factor into the Court's decision of this motion.

Accordingly, the convenience of witnesses and the interests of just, accurate adjudications on all issues presented by the case will be furthered by a transfer to Arizona, and none of Penguin's anticipated arguments can alter that conclusion one whit.

## 5. Transfer Will Further Conservation of This District's Judicial Resources

Penguin does not reside here, and has no claim upon this District's resources. Given the effects of the sequester, forcing budget-tightening in this Court, there is no reason for those resources to be devoted to this case, just as there was no reason for the prior action to consume the judicial resources of the SDNY, the Second Circuit, and the NYCA. This case has a logical connection to Arizona, and the District of Arizona has the resources to handle this case. Accordingly, the conservation of the resources of this District favors transfer.

///

---

[4] The purported infringement of "The Golden Ass of Apuleuius" will not support a claim for statutory damages, because the copyright had not been registered prior to the purported infringement occurring.

**6. Conclusion**

    For all of the above reasons, defendant respectfully submits that good cause exists to grant the motion, and issue an Order in the form submitted herewith, transferring the action to the District of Arizona.

DATED: June 17, 2013

/s/ Derek C. Johnson
Derek C. Johnson, OSB #88234
Johnson Johnson Larson & Schaller
Attorney for Defendant American Buddha