UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

PENGUIN GROUP (USA) INC.,  )
                           )
          Plaintiff,       )    No. 03:13-cv-00497-HU
                           )
vs.                        )
                           )    **FINDINGS & RECOMMENDATION ON**
AMERICAN BUDDHA,           )    **MOTION TO TRANSFER VENUE**
                           )
          Defendant.       )
       _____

Duane A. Bosworth
Tim Cunningham
Davis Wright Tremaine LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, OR 97201-5610

     Attorneys for Plaintiff


Todd E. Bofferding
1215 B Street
P.O. Box 539
Hood River, OR 97031

     Attorney for Defendant



HUBEL, United States Magistrate Judge:

     The plaintiff Penguin Group (USA) Inc. ("Penguin") brings this action for copyright infringement, alleging the defendant American Buddha has willfully violated Penguin's "exclusive rights in the novels *Oil!* by Upton Sinclair and *It Can't Happen Here* by Sinclair Lewis; and two new translations: E.J. Kenney's translation of *The Golden Ass* by Apuleius and R.E. Latham's translation of *On the*

1  - FINDINGS & RECOMMENDATION

*Nature of the Universe* by Lucretius" ("the Books"). Dkt. #73, ¶ 1. The matter currently before the court is American Buddha's "Motion to Transfer Action to District of Arizona [F.R.C.P. 12(b)(3)]." Dkt. #25. American Buddha is an Oregon corporation, but argues that all of its key witnesses are Arizona residents, and Arizona would not impose any additional inconvenience on Penguin, which is a New York resident. American Buddha argues the District of Arizona is a more convenient, appropriate forum for this lawsuit. *Id.* Penguin argues American Buddha has not met its burden to show venue should be transferred. Dkt. #34. The motion is fully briefed, and the court heard oral argument on the motion on September 12, 2013. The undersigned submits the following findings and recommended disposition of the motion pursuant to 28 U.S.C. § 636(b)(1)(B).[1]

### *STANDARDS*

In general, a civil action may be brought in one of three venues: (1) if all defendants are residents of the same state, then "a judicial district in which any defendant resides"; or (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"; or (3) if neither of the previous two provisions applies, then "any

---

[1] A motion to transfer venue is a non-dispositive matter falling within the province of a United States Magistrate Judge. *See Paoa v. Marati*, 2007 WL 4563938, at *2 (D. Haw. Dec. 28, 2007) (same); *Corrinet v. Burke*, 2012 WL 1952658, at *5 (D. Or. Apr. 30, 2012) (Coffin, MJ) (reaching the same conclusion). However, the undersigned elects to submit findings and recommendation on the current motion to allow the parties an opportunity to seek review prior to transfer of the case.

2 - FINDINGS & RECOMMENDATION

judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). However, in copyright infringement actions, "[p]roper venue is found 'in the district in which the defendant or his agent resides or may be found.'" *Herer v. Ah Ha Pub, LLC*, ___ F. Supp. 2d ___, 2013 WL 686943, at *2 (D. Or. Feb. 25, 2013) (Simon, J.) (quoting 28 U.S.C. § 1400(a)). In the present case, it is undisputed that the defendant American Buddha is an Oregon corporation. Oregon is, therefore, the district in which American Buddha "resides." *See* 28 U.S.C. § 1391(c)(2) ("For all venue purposes . . . an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question. . . ."). Therefore, as a preliminary matter, the court finds venue is proper in this judicial district.

However, even when venue is proper in this court, the court has discretion to transfer a civil action "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district . . . where it might have been brought[.]" 28 U.S.C. § 1404(a). The United States Supreme Court has observed that "venue . . . is primarily a matter of choosing a convenient forum." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180, 99 S. Ct. 2710, 2715, 61 L. Ed. 2d 464 (1979) (citing C. Wright, A. Miller, & E. Cooper, *Federal Prac. & Proc.* § 3801, pp. 506 (1976)). "A defendant for whom venue is proper but inconvenient may move for a change of venue under 28 U.S.C. § 1404(a)." *Action Embroidery*

3   - FINDINGS & RECOMMENDATION

*Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004). American Buddha makes such a motion here. Although 28 U.S.C. § 1404(a) somewhat "displaces the common law doctrine of *forum non conveniens*," similar considerations are useful in deciding a motion to transfer under that section. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 2244, 101 L. Ed. 2d 22 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S. Ct. 805, 812, 11 L. Ed. 2d 945 (1964)). The court is charged with balancing "the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum." *Decker Coal*, 805 F.2d at 843 (citations omitted); *accord Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). Notably, "[t]he defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker*, 805 F.2d at 843.

In conducting this balancing of interests, the courts have found a number of factors to be relevant. These factors are similar to those the court weighs to determine jurisdictional issues. Eight factors that have been identified by the Ninth Circuit include: "(1) plaintiff's choice of forum, (2) convenience to the parties, (3) convenience to the witnesses, (4) ease of access to evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) local interest in the controversy, and (8) the relative court congestion

4  - FINDINGS & RECOMMENDATION

and time of trial in each forum." *Benchmade Knife Co. v. Benson*, 2010 WL 988465, at *6 (D. Or. Mar. 15, 2010) (Haggerty, J.) (citing *Decker, supra*). In addition, the court considers "the availability of compulsory process for unwilling witnesses, . . . and judicial economy." *Indoor Billboard Northwest, Inc. v. M2 Systems Corp.*, 922 F. Supp. 2d 1154, 1159 (D. Or. 2013) (Brown, J.). These factors sometimes are categorized as involving "public" and "private" interests. In *Gemini Capital Group, Inc. v. Yap Fishing Corp.*, 150 F.3d 1088 (9th Cir. 1998), the Ninth Circuit listed these factors as follows:

> [P]rivate interest factors . . . include ease of access to sources of proof; compulsory process to obtain the attendance of hostile witnesses, and the cost of transporting friendly witnesses; the possibility of viewing subject premises; and other factors contributing to an expeditious and inexpensive trial. *Creative Technology, Ltd. v. Aztec System Pte. Ltd.*, 61 F.3d 696, 703 (9th Cir. 1995)
>
> \* \* \*
>
> [P]ublic interest factors . . . include administrative difficulties flowing from court congestion; imposition of jury duty on the people of a community unrelated to the litigation; the local interest in resolving the controversy at home; the interest in having a diversity case tried in a forum familiar with the law that governs the action; and the avoidance of unnecessary conflicts of law problems. See *Creative Technology*, 61 F.3d at 703-704.

*Gemini Capital*, 150 F.3d at 1093, 1094. If the balance of factors is relatively even, "the law favors deference toward the plaintiff's choice of forum." *Adidas America, Inc. v. Herbalife International, Inc.*, 2010 WL 596584, at *7 (D. Or. Feb. 12, 2010) (Mosman, J.) (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1117 (9th Cir. 2002)).

5 - FINDINGS & RECOMMENDATION

The standard to defeat a plaintiff's chosen forum is high: a defendant must make "a clear showing of facts which . . . establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) (internal quotation marks, brackets, and citations omitted). Indeed, the *Dole Food* court observed that the doctrine of inconvenient forum "is 'an exceptional tool to be employed sparingly, [not a] . . . doctrine that compels plaintiffs to choose the optimal forum for their claim.'" *Id.* (quoting *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000)).

### ***DISCUSSION***

American Buddha argues Penguin's selection of this judicial district constitutes forum shopping, claiming Oregon is a "foreign venue" that will handicap the odds in Penguin's favor. *See* Dkt. #25, pp. 3-4. American Buddha further argues the "convenience of the parties[] overwhelmingly favors transfer of venue." Dkt. #25, p. 5. In order to conduct the "individualized, case-by-case consideration of convenience and fairness" required in adjudicating a motion to transfer venue, the court must "weigh in the balance a number of case-specific factors." *Stewart Org.*, 487 U.S. at 29, 108 S. Ct. at 2244 (internal quotation marks, citations omitted). This particularized inquiry necessarily includes an examination of the facts underlying the suit. In previous litigation involving the same parties and claims as the instant case, the Southern District of New York found the following facts, among others:

6 - FINDINGS & RECOMMENDATION

> Plaintiff Penguin Group (USA), Inc. . . . is a United States trade book publisher that is incorporated in Delaware and maintains its principal place of business in New York City. American Buddha is an Oregon nonprofit corporation with its principal place of business in Arizona. American Buddha seeks to "provide a unique resource for scholars and students, by providing access to a contained, searchable database of written works spanning centuries." Its database is available through two coordinated websites, the American Buddha Online Library and the Ralph Nader Library. . . .
>
> Tara Carreon - the wife of American Buddha's counsel, Charles Carreon - is the founder, president, director and sole employee of American Buddha. She serves as the librarian for the American Buddha websites.

*Penguin Group (USA), Inc. v. American Buddha*, slip op., 2013 WL 865486, at *1 (S.D.N.Y. Mar. 7, 2013) ("*Penguin I*") (citations to pleadings and declarations in the New York case, and footnotes, omitted).[2] Tara Carreon and her husband reside in Arizona, where American Buddha maintains "all of the documents that would be produced in defense of [this] action[.]" Dkt. #26, Decl. of Tara Lyn Carreon, ¶ 3.

In Penguin's Amended Complaint in the present case, it alleges American Buddha has made available on its websites complete copies of the text of the Books. Penguin alleges it owns exclusive publishing rights in all four of the Books, and claims American Buddha's posting of the text of the Books on its websites violates Penguin's copyright. Dkt. #73.

American Buddha claims its activities fall under a "library exemption" found in Section 18 of the Copyright Act, 17 U.S.C.

---

[2] The instant case is virtually identical to the action brought in the Southern District of New York. That action was dismissed on procedural grounds. *See Penguin I*.

7 - FINDINGS & RECOMMENDATION

§ 108. American Buddha asserts the outcome of this action "would shape the law, as there is no law on this topic." Dkt. #25, p. 3. American Buddha argues it "derives no income from the activity that is the subject of [this] litigation," and defending the action in Oregon would cause it significant financial hardship, "detract[ing] from [American Buddha's] ability to present a meritorious defense to [Penguin's] claims on an issue that affects the public interest." *Id.*, p. 5. Among other things, American Buddha claims it has a "brick and mortar" location in Tucson, Arizona, that "provides a community resource for literary, cultural, and artistic exchange." Dkt. #25, p. 5. It claims it has 52 "members," to whom it "issues library cards and lends books." *Id.* American Buddha has submitted declarations from four of its "members" who are willing to testify as witnesses for American Buddha, but American Buddha asserts it cannot afford to bring those witnesses to Oregon for trial. *Id.; see* Dkt. ##27-30. American Buddha further argues Penguin's claims in this action lack any significant connection to Oregon, and Arizona is "the real 'home' of this case." Dkt. #25, p. 6.

Regarding American Buddha's claim that Oregon lacks any significant connection to this case, Penguin argues evidence submitted in the New York action clearly rebuts such a claim. Penguin points to the declaration of Jacob Hammond - at the time, a resident of Troutdale, Oregon, and American Buddha's website administrator since 2002 - indicating the "media content on [American Buddha's] website is hosted on servers located in Tucson, Arizona and Portland, Oregon." Dkt. #35-1, ¶ 5. The court in the New York action relied on the Hammond declaration in finding American

8  - FINDINGS & RECOMMENDATION

Buddha's website "is hosted on servers in Arizona and Oregon." *Penguin Group (USA) Inc. v. American Buddha*, 2009 WL 1069158, at *1 (S.D.N.Y. Apr. 21, 2009). A different judge in the New York case found the location of the allegedly-infringing conduct was Arizona and Oregon. *Penguin I*, 2013 WL 865486, at *2. Penguin argues American Buddha should be estopped from arguing, in the present case, that no activity in Oregon bears any relationship to this case. Dkt. #34, pp. 7-8.

Penguin further notes American Buddha's own user agreements for its websites "require users to consent to litigation *in the District of Oregon*." Dkt. #34, p. 8 (emphasis in original). Timothy M. Cunningham, one of Penguin's attorneys, has submitted a Declaration attaching printouts of information obtained from American Buddha's websites in June 2013. Among other things, the websites' "Online Library User and Anti-Piracy Agreement" provides that users "consent to the jurisdiction of the U.S. District Court for the District of Oregon for the resolution of any disputes concerning [the user's] use of the creative work." Dkt. #35-2, p. 3; Dkt. #35-3, p. 3; Dkt. #35-4, p. 3. In reply, American Buddha submits a Supplemental Declaration of Tara Lyn Carreon, in which she claims the requirement for a user to agree to those "clickwrap" user agreements was removed from the American Buddha websites in 2010, but because Ms. Carreon did not know how to remove the agreements "from the server entirely, or to put them in a 'Trash Folder' where they would not be seen by the public or indexed in the internal search engine, they remained where they could be found by [Penguin's counsel]." Dkt. #44, ¶ 10. Ms. Carreon claims users of the online libraries no longer have to sign any type of user

9 - FINDINGS & RECOMMENDATION

agreement in order to view the websites' content, which she asserts "entirely rebut[s]" Penguin's argument. *Id.*, ¶ 12.

Several of the factors considered by the courts in connection with motions to transfer either weigh equally for both parties in this case, or have little or no relevance to the present inquiry. This case involves interpretation and application of federal law with which all federal courts will have equal familiarity. Given that the case raises an issue of first impression, the citizens of both Arizona and Oregon have an equal interest in resolving the issue. Neither party has offered evidence to show that either judicial district (Arizona or Oregon) has a greater or lesser case load, or administering the case would be more or less difficult in either jurisdiction. However, the court would be remiss in failing to note the rapid rise in the criminal caseload in Arizona, resulting in the creation of new judgeships in that court in recent years, and the current recommendation for several more new judgeships. Both Arizona and Oregon appear to have an interest in the litigation, with American Buddha's physical location in Arizona, and its legal "residence" and a virtual location in Oregon.

Even if American Buddha removed, in 2010, any requirement for users of its websites to consent to jurisdiction in this court, American Buddha clearly contemplated that it might sue, or be sued, in the District of Oregon. It is undisputed that American Buddha at one time required its online users to consent to the jurisdiction of this court, and that practice continued for several years after American Buddha's principal moved to Arizona. Nevertheless, the balance of factors tips in American Buddha's favor. American Buddha's physical library, the vast majority of its evidence, and

10 - FINDINGS & RECOMMENDATION

most (or all) of its witnesses are located in Tucson, Arizona. Thus, three of the six factors identified by Judge Haggerty in *Benchmade Knife* weigh in American Buddha's favor. The only one of those eight factors weighing in Penguin's favor is its choice of forum. Further, Penguin is a Delaware corporation with its principal place of business in New York. Penguin can hardly argue, therefore, that Oregon is a more convenient forum than Arizona. Indeed, at oral argument, Penguin's counsel conceded that Oregon and Arizona essentially are equal in terms of convenience to Penguin. At best, Penguin argues transfer of the case will result in additional delay in addressing its claims. While Penguin's expenses will be about the same in either forum, American Buddha's expenses will be substantially higher if it is forced to defend the case in Oregon. Deference toward the plaintiff's choice of forum is overcome by the balance of factors tipping decidedly in American Buddha's favor.

Accordingly, for the reasons discussed above, the undersigned recommends that American Buddha's motion to transfer venue be **granted**.

### *SCHEDULING ORDER*

These Findings and Recommendation will be referred to a district judge. Objections, if any, are due by **October 4, 2013**. If no objections are filed, then the Findings and Recommendations will go under advisement on that date. If objections are filed, then any response is due by **October 21, 2013**. By the earlier of the

11 - FINDINGS & RECOMMENDATION

response due date or the date a response is filed, the Findings and Recommendations will go under advisement.

    IT IS SO ORDERED.

                    Dated this <u>16th</u> day of September, 2013.

                    /s/ Dennis J. Hubel

                    _____
                    Dennis James Hubel
                    Unites States Magistrate Judge